UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MERCEDES DAWN C.,[1] <br><br> Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY, Commissioner of Social Security Administration,[2] <br> Defendant. | Case No. 1:22-cv-00525-DKG <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff filed a Complaint for judicial review of the Commissioner's denial of her application for disability and disability insurance benefits. (Dkt. 1). Having reviewed the Complaint, the parties' memoranda, and the administrative record (AR), the Court will reverse and remand the decision of the Commissioner for the reasons set forth below.

## BACKGROUND

On April 29, 2020, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on December 9, 2018. (AR 19, 38). Plaintiff's application was denied initially and on reconsideration. A

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Martin J. O'Malley became the Commissioner of Social Security Administration on December 20, 2023. Fed. R. Civ. P. 25(d).

**MEMORANDUM DECISION AND ORDER - 1**

hearing was conducted on October 20, 2021, before Administrative Law Judge (ALJ) Wynne O'Brien-Persons. (AR 38).[3]

After considering testimony from Plaintiff and a vocational expert, the ALJ issued a written decision on October 27, 2021, finding Plaintiff not disabled. (AR 38-46). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. *See* 42 U.S.C. § 405(h). Plaintiff timely filed this action seeking judicial review of the ALJ's decision. (Dkt. 1). The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

On the date of the ALJ's decision, Plaintiff was fifty years of age. Plaintiff is a high school graduate with some college and past relevant work experience as a customer service representative and liquor store cashier. (AR 45). Plaintiff claims disability due to physical and mental impairments including: neurofibromatosis; depression; anxiety; chronic pain in her feet, knees, hips, and back; and insomnia. (AR 53).

## THE ALJ'S DECISION

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

---

[3] The hearing was conducted with the consent of the Plaintiff by online video due to the Coronavirus Pandemic of 2019. (AR 17, 38).

Here, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 40). At step two, the ALJ determined Plaintiff suffers from the following medically determinable severe impairments: morbid obesity, neurofibromatosis syndrome, and osteoarthritis of the bilateral knees. (AR 40). The ALJ concluded Plaintiff's mild hearing loss in the left ear, obstructive sleep apnea, hypothyroidism, major depressive disorder, and anxiety disorder, were not severe. (AR 41-42).

At step three, the ALJ determined that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 42). The ALJ next found Plaintiff retained the Residual Functional Capacity (RFC) for light work with the following limitations:

> [Claimant can] stand and/or walk for two hours in an eight-hour workday; stand and walk for 15 minutes at a time; after every hour of sitting, the claimant requires the option to stand for one to two minutes while staying on task; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; unlimited balance; occasionally stoop, kneel, crouch, and crawl; frequently handle with the right upper extremity; frequently finger with the bilateral upper extremities; and avoid moderate exposure to work hazards.

(AR 42-43).

At step four, the ALJ found Plaintiff capable of performing past relevant work as a customer service representative as actually and generally performed. (AR 45). The ALJ therefore determined Plaintiff was not disabled from the alleged onset date through the date of the decision. (AR 46).

## ISSUES FOR REVIEW

1.      Whether the ALJ properly considered Plaintiff's subjective symptom allegations.

2.      Whether the ALJ properly considered a lay witness statement.

3.      Whether the ALJ properly evaluated the medical opinion evidence.

4.      Whether the RFC is supported by substantial evidence.

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id*.

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id*.

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin*., 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id*.

**DISCUSSION**

**1.    Plaintiff's Symptom Testimony and Statements**

Plaintiff argues the ALJ failed to provide clear and convincing reasons to disregard her subjective symptom statements. (Dkt. 22 at 5-8). Defendant maintains the ALJ provided legally sufficient reasons to reject Plaintiff's statements. (Dkt. 24 at 2-6).

Where the record contains objective medical evidence "establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which [s]he complains" and there has not been an affirmative finding of malingering, a claimant's subjective symptom testimony may only be rejected for clear and convincing reasons. *Carmickle*, 533 F.3d at 1160. The clear and convincing standard does not require this Court to be convinced, but instead asks "whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

In the functional report, Plaintiff states her chronic pain makes it difficult to get out of bed sometimes; wear appropriate underclothes; sit, stand, and walk for much more than thirty minutes at a time; wear shoes; and lift, squat, bend, reach, kneel, take the stairs, or use her hands. (AR 211-12, 216). Plaintiff reports her daily activities involve preparing meals, dressing, attending to her personal care, some house cleaning, watching TV, surfing the internet, social media, caring for her cats, and picking her husband up from work. Plaintiff regularly drives, shops, and visits others, but can no longer go camping. (AR 214-15). During the hearing, Plaintiff testified to having pain in her feet, knees, back, shoulders, neck, and to some extent her hands. (AR 21). Plaintiff stated she has difficulty walking and standing for more than fifteen minutes due to neurofibromatosis, and with sitting for "a while." (AR 21). Plaintiff testified she needed to sit for thirty minutes to an hour after

standing. (AR 25). Plaintiff stated she was unable to continue working due to pain despite having a sit/stand desk at her last job. (AR 20-21). Plaintiff observed that removing the neurofibromas helps alleviate some of the pain in that area, and that medications make the pain manageable. (AR 22, 27).

Here, after summarizing Plaintiff's functional report and testimony, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 43). The ALJ reasoned that Plaintiff's pain complaints were partially consistent with the evidence of bilateral knee pain and neurofibromas, but were not fully consistent with the several records reporting normal objective functional findings, the conservative treatment history of her chronic pain and neurofibromas, Plaintiff's statements of the effectiveness of medications in controlling her symptoms, and the imaging of her knees. (AR 43-44). The ALJ further found Plaintiff's daily activities were not as limiting as would be expected from an individual alleging disability and that the record supports the RFC assessed.

Plaintiff disagrees with the ALJ's conclusions that she was treated conservatively and that her daily activities demonstrated she was able to work, and disputes the ALJ's discussion of the medical record. (Dkt. 22, 27). Having carefully reviewed the parties' briefing and the record, the Court finds the ALJ provided clear and convincing reasons for rejecting Plaintiff's symptom statements, and the ALJ's conclusions are supported by substantial evidence. Namely, that Plaintiff's subjective pain complaints were not fully consistent with the objective medical evidence, conservative treatment history, and Plaintiff's

**MEMORANDUM DECISION AND ORDER - 6**

statement of the effectiveness of medications.

First, while Plaintiff reported difficulty with walking and standing due to pain in her knees and neurofibromatosis, the ALJ identified objective medical findings in the record reflecting that Plaintiff had normal strength, movement, gait, sensation, reflexes, and coordination. Specifically, the ALJ identified objective medical evidence showing Plaintiff's bilateral knee osteoarthritis was mild; received no significant treatment for knee pain; had normal gait and intact sensation, reflexes, and coordination; had full motor strength and range of motion; and reported that medications mostly controlled her symptoms. (AR 43-44). The Court finds the ALJ accurately and properly discussed the medical record, and that the ALJ's conclusion that Plaintiff's statements were inconsistent with objective medical evidence is reasonable and supported by substantial evidence. This is a proper clear and convincing reason for rejecting Plaintiff's symptom statements. *Smartt*, 53 F.4th at 498 (inconsistency between claimant's statements and medical evidence is a clear and convincing reason to discount symptom statements).

Notably, the ALJ did not conclude that Plaintiff's impairments caused no pain. Rather, the ALJ explained that the normal objective findings in the medical record rendered Plaintiff's complaints of debilitating pain not wholly reliable. Thus, the ALJ found Plaintiff's statements partially consistent with the evidence. (AR 43). The Court finds the ALJ's rationale on this point is clear, convincing, and supported by the record. *Smartt*, 53 F.4th at 498-99. Plaintiff's differing interpretation of the medical record is not a basis for remand. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (Where the evidence "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by [substantial evidence in] the record."); *Burch v. Barnhart*, 400 F.3d 676, 679

(9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Second, the ALJ found Plaintiff's subjective pain complaints were not fully consistent with her conservative treatment history. The Court finds the ALJ's reasoning and explanation on this point to be clear, convincing, and supported by substantial evidence. The ALJ identified specific medical evidence reflecting that Plaintiff received no significant treatment for her bilateral knee pain, reported that medications mostly controlled her symptoms, and was prescribed orthotics to treat the multiple neurofibromas on her feet. (AR 43-44). The ALJ observed that in 2020 and 2021, Plaintiff underwent non-emergent, outpatient procedures to remove several neurofibromas from other parts of her body. (AR 44). The ALJ's discussion of the record is accurate and her conclusion that Plaintiff's treatments were conservative is reasonable, particularly in light of the objective medical evidence reporting normal functional abilities and Plaintiff's statement that medications do a good job of controlling her symptoms. (AR 486). Therefore, this was a clear and convincing reason for the ALJ to discredit Plaintiff's symptom statements. Plaintiff's disagreement with the ALJ's interpretation of the record is not a basis for remand. *Burch*, 400 F.3d at 679.

The ALJ also concluded that Plaintiff's daily activities are not indicative of a person with disability level limitations and that Plaintiff has the ability to perform a reduced range of light work consistent with the RFC. (AR 44). In particular, the ALJ noted Plaintiff reported the ability to handle all of her own personal care, attend to her cats, prepare meals, perform a few household chores, drive, shop in stores, handle finances, read, watch TV, and use social media. (AR 44). Plaintiff argues the ALJ erred by failing to explain how these activities, carried out at her own pace, demonstrated an ability to perform work-related

**MEMORANDUM DECISION AND ORDER - 8**

functions in an employment setting. (Dkt. 22, 27).

"Inconsistencies between a claimant's testimony and the claimant's reported activities [may] provide a valid reason for an adverse credibility determination." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (citation omitted). However, "[g]eneral findings [of credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "[A]n ALJ's mere recitation of a claimant's activities is insufficient to support rejection of the claimant's testimony as a matter of law." *Martha S. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 4989911, at * 5 (D. Or. October 27, 2021).

Here, the Court finds the ALJ's generalized summary of Petitioner's daily activities fails to provide the requisite explanation of "what symptom testimony [was] not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). As the ALJ did not explain "which daily activities conflicted with which part of [Plaintiff's] testimony," the ALJ erred. *See Burrell*, 775 F.3d at 1138. Therefore, the Court finds Plaintiff's daily activities was not a clear and convincing reason to reject her symptom statements. This error was harmless, however, because the ALJ cited other clear and convincing reasons for discrediting Plaintiff's symptom statements, as discussed above. *Carmickle*, 533 F.3d at 1162–63.

## 2. Nonmedical Source Statement

Plaintiff argues the ALJ improperly rejected the nonmedical source statement without providing germane reasons for doing so. (Dkt. 22 at 11-12). Defendant argues that ALJ's are no longer required to articulate how they consider nonmedical source evidence following the 2017 revision to the Regulations. (Dkt. 24 at 7-8). Alternatively, Defendant suggests that any

**MEMORANDUM DECISION AND ORDER - 9**

error in rejecting the nonmedical source evidence was harmless, because the evidence was substantially the same as Plaintiff's subjective symptom testimony, which the ALJ properly rejected.

The parties have framed an issue that is unsettled in the Ninth Circuit. *See Stephens v. Kijakazi*, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023) ("We have not yet addressed whether under the new regulations an ALJ is still required to provide germane reasons for discounting lay witnesses. However, we need not decide this issue because any error in not addressing these lay witnesses' testimony was harmless."); *Fryer v. Kijakazi*, 2022 WL 17958630 (9th Cir. Dec. 27, 2022) ("it is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear that they are no longer required to articulate it in their decisions.").

The 2017 Regulations revised the language relating to how ALJs must consider nonmedical evidence, stating: "[w]e are not required to articulate how we considered evidence from nonmedical sources using the requirements" applicable to medical opinion evidence. 20 C.F.R. § 404.1520c(d). The Ninth Circuit has yet to rule on whether the 2017 Regulations displaced the "germane reasons" standard for rejecting nonmedical source evidence. *M.P. v. Kijakazi*, 2022 WL 1288986, at *7 (N.D. Cal. Apr. 29, 2022). In the absence of controlling precedent, district courts in the Ninth Circuit have reached differing results. *Compare Wendy J.C. v. Saul*, 2020 WL 6161402, at *12 n. 9 (D. Or. Oct. 21, 2020) (explaining that, for claims filed after the effective date of the 2017 Regulations that "the ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony"), *with Joseph M.R. v. Comm'r, Soc. Sec. Admin.*, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019) (holding the 2017 Regulations "do[] not eliminate the need for the ALJ to

articulate his consideration of lay-witness statements and his reasons for discounting those statements").

The Court need not resolve this issue here, because any error resulting from the ALJ's rejection of the nonmedical source statement was harmless. "Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness' testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony." *Thomas v. Comm'r, Soc. Sec. Admin.*, 2022 WL 292547, at *7 (D. Ariz. Feb. 1, 2022) (citing *Caleb H. v. Saul*, 2020 WL 7680556, at *8 (E.D. Wash. Nov. 18, 2020); *see also Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

Here, the statement of Plaintiff's mother parallels Plaintiff's own subjective symptom testimony. (AR 211-228). While Plaintiff's mother provides greater descriptive details, both statements cite pain as Plaintiff's primary limitation, mirror in their descriptions of Plaintiff's daily activities, and offer substantially similar descriptions of Plaintiff's limitations and abilities.[4] As noted above, the ALJ provided clear and convincing reasons for rejecting

---

[4] The only substantive difference between the statements is that the nonmedical source statement reports Plaintiff has difficulty concentrating and completing tasks. (AR 225, 227). However, there is no other indication in the record that Plaintiff is limited in those abilities. Further, the ALJ found Plaintiff had no limitation in that area of mental functioning, which Plaintiff has not disputed or assigned error and has therefore waived. (AR 42); (Dkt. 22, 27); *Carmickle*, 533 F.3d at 1161 n. 2.

Plaintiff's subjective symptom testimony. Those reasons apply equally to the nonmedical source statements. Accordingly, any error by the ALJ in failing to articulate germane reasons for rejecting the medical source statement is harmless.

**3.      Medical Opinion Evidence**

Plaintiff's statement of this issue asserts the ALJ erred in evaluating the opinions of the State agency medical consultants – Dr. Michael Spackman and Dr. Myung Song. (Dkt. 22). However, Plaintiff's actual assignments of error are that the ALJ improperly substituted her layperson opinion for a medical opinion, failed to order a consultative examination, did not explain how she determined the RFC limitations or how the limitations accounted for Plaintiff's impairments such that Plaintiff could sustain full-time employment, and fashioned an RFC that is not supported by substantial evidence. (Dkt. 27 at 5-7). Defendant maintains the ALJ properly evaluated the medical opinion evidence, assigned limitations in the RFC that were supported by the record, and was not required to obtain a consultative examination. (Dkt. 24). Further, Defendant argues that any error by the ALJ was harmless.

The Court will address the arguments on this issue as presented by Plaintiff. Consequently, the Court will not discuss whether the ALJ evaluated the supportability and consistency of the medical opinions in accordance with the regulations. *See* 20 C.F.R. § 404.1520c. Plaintiff's arguments relevant to whether the RFC is supported by substantial evidence will be addressed in the section below.

**A.      Legal Standards**

An ALJ has a duty to fully and fairly develop the record when the evidence is ambiguous or the "record is inadequate to allow for proper evaluation of the evidence." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (citing *Tonapetyan v. Halter*, 242 F.3d

1144, 1150 (9th Cir. 2001); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An

ALJ's duty to develop the record further is triggered only when there is ambiguous evidence

or when the record is inadequate to allow for proper evaluation of the evidence."). An ALJ

may discharge this duty in several ways, including: ordering a consultative examination,

subpoenaing the claimant's physicians, submitting questions to the claimant's physicians,

continuing the hearing, or keeping the record open after the hearing to allow supplementation

of the record." 20 C.F.R. § 404.1519a ("We may purchase a consultative examination to try

to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to

allow us to make a determination or decision on your claim."); *Tonapetyan*, 242 F.3d at

1150.

      A consultative examination should be ordered "when the record is incomplete, the

evidence is ambiguous, or where it is necessary to 'fully and fairly develop' and to 'assure

that the claimant's interests are considered.'" *Bucy v. Colvin*, 2015 WL 5708599, at *8 (D.

Idaho Sept. 29, 2015) (quoting *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)). The

decision to order a consultative examination is within the ALJ's discretion, a claimant does

not have "an affirmative right to have a consultative exam performed by a chosen specialist."

*Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001).

      Still, an ALJ cannot rely on their own lay knowledge to make medical interpretations

of examination results or determine the severity of medically determinable impairments.

*Tackett*, 180 F.3d at 1102-03 (ALJ's residual functional capacity assessment cannot stand in

the absence of evidentiary support); *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal.

2006) ("An ALJ cannot arbitrarily substitute [their] own judgment for competent medical

opinion, and [] must not succumb to the temptation to play doctor and make [their] own

**MEMORANDUM DECISION AND ORDER - 13**

independent medical findings"); *Padilla v. Astrue*, 541 F.Supp.2d 1102, 1106 (C.D. Cal. 2008) (opining that an ALJ is not qualified to extrapolate functional limitations from raw medical data)). However, it is the ALJ's province to translate and incorporate medical findings into an RFC. *Rounds v. Comm'r, Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

## B.    Analysis

Dr. Spackman and Dr. Song opined that Plaintiff was able to perform sedentary work with no manipulative limitations, but with some exertional and postural limitations. (AR 53-64, 66-72). The ALJ misstated the agency consultants' opinions as stating Plaintiff was able to perform a "reduced range of light work," and then the ALJ found the opinions "partially persuasive." (AR 45).[5] The ALJ concluded that the evidence of Plaintiff's neurofibroma removals, need to wear orthotics, and increased instability in her knees and discomfort in her left shoulder warranted the "more restrictive standing/walking, position change, and manipulative limitations" assigned in the RFC.

---

[5] Both the ALJ and Defendant incorrectly state that the State agency medical consultants opined that Plaintiff could performed a reduced range of light work. (AR 45); (Dkt. 24 at 6). However, the consultants' opinions plainly recommended an RFC for sedentary work. (AR 63, 71). Plaintiff does not raise this as error and, therefore, has waived the same. *Carmickle*, 533 F.3d at 1161 n. 2 (court may decline to consider issues not raised with specificity in plaintiff's opening brief); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). In any event, the error was harmless because the ALJ assigned an RFC with limitations, as relevant here, consistent with sedentary work and the medical opinions, despite using the term "light work." (AR 42); SSR 83-10 (defining the sitting, standing, and walking limitations for sedentary and light work). Further, the ALJ concluded Plaintiff was capable of performing her past relevant work as a customer service representative, which is a sedentary level job. (AR 45). Still, the ALJ's misstatement of the opinions adds to the Court's difficulty in discerning the ALJ's reasoning relative to the reversable errors found herein.

Plaintiff claims the ALJ erred by independently assessing RFC limitations without the support of a medical opinion, by failing to explain the bases for the more restrictive limitations, and by not ordering a consultative examination. The Court finds otherwise.

As relevant to the issues raised on review, the ALJ adopted the limitations opined by the agency consultants, despite the inconsistent use of the terminology for "sedentary work" and "light work." (AR 42, 60, 70).[6] The ALJ then imposed additional restrictions in the RFC for standing, walking, and position changes. (AR 42). The ALJ explained that the more restrictive limitations were supported by evidence showing Plaintiff has "not had the neurofibromas removed from the bottoms of her feet, she wears orthotics in her shoes, and in 2021, she began complaining of increased instability in her knees and increased discomfort in her left shoulder." (AR 45).

Viewing the decision in its entirety, the Court finds the ALJ explained the reasons for assigning the functional limitations on standing, walking, and position changes based on particular records of Plaintiff's pain from neurofibromas, her knees, and left shoulder. (AR 43-45). In any event, assigning greater limitations in the RFC was harmless error, as those limitations benefit Plaintiff. Further, the Court finds the ALJ was not required to order an additional consultative examination, as there is no indication that the record was ambiguous or incomplete. *McLeod*, 640 F.3d at 885. Nor did the ALJ improperly interpret raw medical

---

[6] The consultants assigned lifting/carrying abilities consistent with light work, rather than sedentary work, despite recommending an RFC of sedentary. 20 C.F.C. § 404.1567(a), (b) (Sedentary work involves not lifting more than ten pounds and occasionally lifting or carrying small articles, whereas light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds.). The ALJ adopted the consultants' opinions as to lifting/carrying as well as their postural and environmental limitations, but included additional manipulative limitations. Plaintiff does not contest the lifting/carrying, postural, environmental, or manipulative limitations assigned by the ALJ. Therefore, any error in this regard is waived. *Carmickle*, 533 F.3d at 1161 n. 2.

**MEMORANDUM DECISION AND ORDER - 15**

data or arbitrarily impose her own limitations. Rather, the ALJ acted within her proper role of translating and incorporating medical findings into an RFC. *Rounds*, 807 F.3d at 1006. However, as discussed below, the Court finds harmful error in the ALJ's RFC determination.

**4.      RFC Determination**

Plaintiff argues the ALJ erred by failing to include all of her functional limitations in the RFC and that the RFC was not supported by substantial evidence. (Dkt. 22, 27). Defendant asserts the ALJ properly incorporated Plaintiff's limitations into the RFC, which was reasoned and well-supported by the record. (Dkt. 24).

**A.      Legal Standard**

Residual functional capacity (RFC) is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). The ALJ must consider all relevant evidence in the record and all of a claimant's medically determinable impairments, whether severe or not, when assessing a RFC. *Carmickle*, 533 F.3d at 1164; *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); 20 C.F.R. § 404.1545(a)(2) and (3). But "an RFC that fails to take into account a claimant's limitations is defective." *Valentine*, 574 F.3d at 690.

In determining the RFC, the role of the ALJ is to perform a careful examination of the medical record to ascertain a claimant's disability status and ability to work. 20 C.F.R. § 404.1545(a)(3); *Vertigan*, 260 F.3d at 1049. The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008);

*Rounds*, 807 F.3d at 1006 ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). In addition to medical evidence, the ALJ must consider descriptions and observations of the claimant's limitations, including limitations resulting from pain. *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the hypothetical question posed to the vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

The RFC finding must be supported by substantial evidence in the record and the ALJ must explain their reasoning underlying the RFC. 42 U.S.C. § 405(b); 20 C.F.R. § 404.1520c. When reviewing the ALJ's RFC assessment under the substantial-evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154. The ALJ must set forth the reasoning underlying the decision in a way that allows for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *Laborin*, 867 F.3d at 1153 (The RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence.). The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

### B.    Analysis

Here, the ALJ concluded Plaintiff was capable of performing a reduced range of light work, assigning limitations in the RFC that Plaintiff could stand and walk for two hours in an eight hour workday; stand and walk for fifteen minutes at a time; must be allowed to change positions for one to two minutes while staying on task after every hour of sitting; and other

postural, manipulative, and environmental limitations. (AR 42-43). Plaintiff argues the RFC

fails to include limitations for her chronic pain symptoms caused by her neurofibromas and

her frequent absences due to having neurofibromas removed. (Dkt. 22 at 13).

 As to the first argument, Plaintiff maintains that pain prevents her from being able to

sit, stand, and walk sufficient to sustain full-time employment on a regular and continuing

basis, even when allowed to change positions. (Dkt. 22, 27). Specifically, Plaintiff contends

the ALJ failed to take into account her difficulty with prolonged sitting due to her obesity

and neurofibromas on her back and buttocks. (Dkt. 22 at 10). The Court agrees.

 During the hearing, Plaintiff testified that after sitting for "a while," her knees will

lock up, and the neurofibromas on her back and backside start hurting from the pressure. (AR

21). The ALJ discussed Plaintiff's knee pain, obesity, and neurofibromas throughout the

written decision, and included an additional restriction in the RFC that Plaintiff be allowed to

change positions after every hour of sitting. (AR 42-43). However, nowhere in the written

decision did the ALJ address Plaintiff's abilities or limitations with prolonged sitting. This,

the Court finds, was error.

 The record contains conflicting evidence regarding Plaintiff's ability to sit for long

enough to perform sedentary work, even with position changes. For instance Plaintiff

testified during the hearing that she would sit from anywhere between thirty minutes to an

hour at a time, which is seemingly consistent with the RFC assessment and position change

restriction. (AR 25). However, Plaintiff also reported leaving her prior occupation due to

pain despite having a sit/stand desk, being unable to sit in a car for long drives, and difficulty

with sitting for a while. (AR 20-21, 24, 211-212). The ALJ did not address this conflicting

evidence concerning Plaintiff's ability to sit in the written decision nor express any finding

**MEMORANDUM DECISION AND ORDER - 18**

with regard to the same. Having carefully reviewed the entire decision and record, the Court is unable to discern the ALJ's reasoning concerning Plaintiff's ability to sit and work on a regular and continuing basis, and whether the RFC restriction allowing for position changes addresses Plaintiff's limitations. Nor can the Court determine what materials the ALJ relied upon in reaching her decision. The Court is therefore unable to meaningfully review the ALJ's decision and determine whether it is free from error. *Brown-Hunter*, 806 F.3d at 492. Accordingly, the ALJ's failure to explain her findings concerning Plaintiff's ability to sit is harmful error which requires remand. *Molina*, 674 F.3d at 1115 (An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination.").

With regard to absenteeism, "[c]ourts have observed that '[a]bsenteeism due to the frequency of treatment is a relevant factor so long as the treatment is medically necessary and concerns the conditions on which the disability claim is founded.'" *N.N. v. Kijakazi*, 2021 WL 4481782, at *7 (N.D. Cal. Sept. 30, 2021) (quoting *Scott G. v. Comm'r, Soc. Sec.*, 2021 WL 958452, at *4 (W.D.N.Y. Mar. 15, 2021)). However, the frequency of medical appointments, alone, does not establish a claimant is unable to perform work on a regular and continuing basis. *See Alicia M. v. Comm'r, Soc. Sec.*, 2023 WL 2744135, at *6 (D. Idaho March 31, 2023) (discussing *Goodman v. Berryhill*, 2017 WL 4265685, at *2–3 (W.D. Wash. Sept. 25, 2017, *aff'd*, 741 F. App'x 530 (9th Cir. 2018))). Work "on a regular and continuous basis ... means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184 at *1, 2 (July 2, 1996); 20 C.F.R. § 404.1545(b) & (c) (assessing physical and mental limitations to "determine your residual functional capacity for work activity on a regular and continuing basis").

Here, the vocational expert testified that consistent absences of one or two days per

month for doctors' appointments would eliminate competitive employment. (AR 32).

Treatment records from the dermatology office reflect that Plaintiff had multiple medical

appointments each month between August 2020 and February 2021 to remove

neurofibromas. (AR 515-622, 652-71). Plaintiff testified that she stopped having the

neurofibromas removed due to lack of finances, but that she planned to have a few removed

from her feet when she could afford to do so. (AR 22-24). Plaintiff asserts that the frequency

of her medical appointments will only increase with proper medical care and financial

support. (Dkt. 22 at 13). This evidence suggests Plaintiff could be absent from work for

treatment of her neurofibroma more than two days per month.

However, the ALJ did not address absenteeism. The ALJ's hypothetical to the

vocational expert did not include absenteeism and the ALJ's written decision does not

discuss absenteeism, despite recognizing Plaintiff has neurofibromas all over her body and

the records of multiple neurofibroma removals during the relevant period. (AR 44). Rather,

the ALJ assigned an RFC that included functional limitations for Plaintiff's neurofibromas

and concluded that Plaintiff was capable of performing her past relevant work as a customer

service representative, based on the testimony of the vocational expert. Without some

discussion by the ALJ, it is impossible for the Court to discern whether the ALJ considered

absenteeism and, if so, the ALJ's reasoning for concluding Plaintiff was able to work on a

regular and continuous basis. Therefore, the Court is unable to properly review the ALJ's

decision. *Brown-Hunter*, 806 F.3d at 492.

Moreover, the record is uncertain with regard to absenteeism and the medical

necessity of the neurofibroma removals Plaintiff desires. Plaintiff testified that she planned

on removing neurofibromas from the bottom of her feet, but admitted that her treatment

providers "don't like to do that, because the scarring is just more painful than the tumors."
(AR 24). Medical records likewise reflect that Plaintiff's dermatologist stated they cannot
remove the nodules on the bottom of her feet. (AR 660). Thus, the record is conflicting with
regard to whether and to what extent Plaintiff would be absent from work to have
neurofibromas removed due to medically necessity. That is a matter for the ALJ to resolve in
the first instance. Accordingly, remand for additional proceedings is appropriate.

**5.      Remand For Additional Proceedings is Appropriate**

Plaintiff requests remand for an immediate award of benefits. (Dkt. 22). The decision
whether to remand for further proceedings or order an immediate award of benefits is within
the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). In
general, when the Court reverses an ALJ's decision "the proper course, except in rare
circumstances, is to remand to the agency for additional investigation or explanation."
*Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, where no useful purpose
would be served by further administrative proceedings, or where the record has been fully
developed, it is appropriate to exercise this discretion to direct an immediate award of
benefits. *Harman*, 211 F.3d at 1179.

In determining whether an award of benefits is warranted, the court conducts the
"three-part credit-as-true" analysis. *Treichler*, 775 F.3d at 1100-01; *Garrison*, 759 F.3d at
1020. Under this analysis, the Court considers whether: (1) the ALJ has failed to provide
legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and
further proceedings would serve no useful purpose; and (3) if the improperly discredited
evidence were credited as true, the ALJ would be required to find the claimant disabled on
remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all three

requirements are met, the decision whether to remand a case for additional evidence or to award benefits is left to the court's discretion. *Treichler*, 775 F.3d at 1101–02. Where the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011); *Harman*, 211 F.3d at 1179-81.

Here, the Court considered whether to remand for an award of benefits. The first requisite is met based on the ALJ's harmful legal error. However, upon a careful review, the Court finds the evidence in this case does not conclusively establish Plaintiff is disabled under the Social Security disability regulations. Rather, the record is sufficiently ambiguous such that the evidence must be weighed and evaluated properly by the ALJ in the first instance, making remand for an immediate award of benefits inappropriate. *Treichler*, 775 F.3d at 1101 (remand for proceedings rather than for an immediate award of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities."). For instance, it is not certain whether the frequency of medically necessary treatments for Plaintiff's impairments would result in absenteeism that eliminates competitive employment. Further, there is conflicting evidence regarding Plaintiff's ability for prolonged sitting, and whether the ability to change positions would address any sitting limitations, which the ALJ did not address. Thus, there is not sufficient evidence to direct a finding that Plaintiff is disabled and entitled to an award of benefits. Further, there is evidence in the record that may support a finding that the functional limitations resulting from Plaintiff's impairments could be accounted for in the RFC assessment and would not prevent Plaintiff from engaging in substantial gainful activity. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (Remand is appropriate "when the

**MEMORANDUM DECISION AND ORDER - 22**

record as a whole creates serious doubts as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.").

For these reasons, the Court will reverse and remand the ALJ's decision for further administrative proceedings. The ALJ should reassess the entire record in making the disability determination on remand.

## **ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that:

1.     The decision of the Commissioner of Social Security is **REVERSED**.

2.     This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3.     This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: February 2, 2024

Honorable Debora K. Grasham
United States Magistrate Judge